**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

TOUSSAINT DAVIS,

                              Plaintiff,

         v.                                                    No. 07-CV-321
                                                                   (FJS/DRH)

WILLIAM CHAPPLE, Chief Deputy; DANIEL G.
MIDDAUGH, Sheriff; DONALD R. NADLER,
Commission of Corrections; ROBERT MYERS,
Shift Commander; LT. GRIFFO, Shift Commander;
KEVIN MILLER, Correctional Officer; BAMBURY,
Correctional Officer; DONALD STOCK, Nurse
Administrator; JANE DOE, Nurse; and HELEN
HEIM, Grievance Coordinator,
                              Defendants.
_____

**APPEARANCES:**                                **OF COUNSEL:**

TOUSSAINT DAVIS
Plaintiff Pro Se
07-B-1357
Clinton Correctional Facility
Post Office Box 2001
Dannemora, New York 12929

DEL BUONO & DIODATI LLP                      DAVID R. DIODATI, ESQ.
Attorney for Defendants Chapple,
   Middaugh, Myers, Griffo, Miller,
   Bambury, Stock, Doe, and Heim
23 Genesee Street
New Hartford, New York 13413

HON. ANDREW M. CUOMO                          RICHARD LOMBARDO, ESQ.
Attorney General for the                      Assistant Attorney General
   State of New York
Attorney for Defendant Nadler
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

Plaintiff pro se Toussaint Davis ("Davis"), an inmate in the custody of the New York

State Department of Correctional Services ("DOCS"), brings this action pursuant to 42

U.S.C. § 1983 alleging that defendants, one employee of the New York State Commission

of Correction, Donald R. Nadler ("Nadler"), and nine employees of the Oneida County

Correctional Facility ("Facility"), violated his constitutional rights under the First, Fourth,

Eighth and Fourteenth Amendments while Davis was incarcerated at the Facility.  Compl.

(Docket No. 1).  Presently pending is Nadler's motion[2] to dismiss pursuant to Fed. R. Civ. P.

12(b)(6).  Docket No. 30. Davis opposes the motion.  Docket No. 35.  For the reasons which

follow, it is recommended that the motion be granted.


**I. Background**

The facts are presented in the light most favorable to Davis as the non-moving party.

See Ertman v. United States, 165 F.3d 204, 206 (2d Cir. 1999).

On February 28, 2006, Davis was confined to the Facility and placed into an empty cell

without a mattress, clothing, under garments, bed linens, or toilet paper.  Compl. at 3.  This

treatment continued for three days.  Id.  On March 3, 2006, Davis was moved from the

empty cell to the Administrative Segregation Unit[3] where he was housed, without a hearing

---

[1]This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

[2]The remaining defendants answered and are proceeding with discovery.  Docket Nos. 13, 27.

[3]The Facility's Administrative Segregation Unit appears similar to the Special Housing units ("SHUs")of the facilities of DOCS.  SHUs exist in all maximum and certain

or explanation as to why he was being housed there until October 5, 2006.  Id. at 4-5.

Davis alleges that while confined in the Administrative Segregation Unit, he was denied

adequate medical treatment after falling while he was participating in his recreation time.

Id. at 4.  The fall was exacerbated by the fact that Davis was shackled in full restraints and

could not soften the landing.  Id.  As a result, Davis suffered discomfort, stiffness, and

swelling in his neck and upper back area.  Id.

On October 5, 2006, when Davis was scheduled to return to the general population, he

was informed that his legal materials would be photocopied and stored for institutional

security reasons.  Id. at 5.  Davis objected and, after being "subjected to brute force by

[various] . . . deputies," he was placed back into Administrative Segregation without his legal

materials.  Id. at 6.  Later that evening, his property was returned but six documents were

missing and the corrections officer removed his blanket, bed linens, and towels from his

cell.  Id.  Davis was temporarily provided, and then deprived of, his blanket, bed linens, and

towels until October 24, 2006.  Id. at 6- 7.

Davis filed numerous complaints about the events occurring on October 5 concerning

his stolen legal property, the defendants' use of excessive force, and the conditions in

which he was confined.  Id. at 7.  These complaints were sent to defendants Heim,

Chapple, and the Commission of Correction.[4]  Id.  Davis also alleges that his family sent

---

medium security facilities.  The units "consist of single-occupancy cells grouped so as to
provide separation from the general population . . . ."  N.Y. Comp. Codes R. & Regs. tit. 7,
§ 300.2(b) (1995).  Inmates are confined in a SHU as discipline, pending resolution of
misconduct charges, for administrative or security reasons, or in other circumstances as
required.  Id. at pt. 301.

    [4]The Commission exists independently of DOCS.  As relevant here, the
Commission of Correction establishes minimum standards for the management of

complaints to the Commission of Correction on his behalf.  Id.  The complaints were not

answered.  Id.  This action followed.


## II.  Discussion

In his complaint Davis alleges that defendants violated his (1) First Amendment rights by

retaliating against him in depriving him his legal mail and providing poor living conditions,

(2) Fourth Amendment rights by photocopying and searching his legal mail without his

consent, (3) Eighth Amendment rights by being deliberately indifferent to his injuries and

housing him in inadequate living conditions, and (4) Fourteenth Amendment due process

rights by housing him in Administrative Segregation without a hearing.  Nadler moves to

dismiss based on (1) a lack of personal involvement and (2) qualified immunity.


## A. Legal Standard

Fed. R. Civ. P. 12(b)(6) authorizes dismissal of a complaint that states no actionable

claim.  When considering a motion to dismiss, "a court must accept the allegations

contained in the complaint as true, and draw all reasonable inferences in favor of the non-

movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994).  However, "a 'complaint

which consists of conclusory allegations unsupported by factual assertions fails even the

liberal standard of Rule 12(b)(6)."  Gilfus v. Adessa, No. 5:04-CV-1368 (HGM/DEP), 2006

WL 2827132, at *3 (N.D.N.Y. Sept. 30, 2006) (citing De Jesus v. Sears, Roebuck & Co. 87

_____

correctional facilities in the state and investigates and oversees their operations.  New
York State Comm'n of Correction Home Page (visited Sept. 2, 2008),
<http://www.scoc.state.ny.us>.

F.3d 65, 70 (2d Cir. 1996) (internal quotations omitted)).  Thus, dismissal is only warranted

if it appears, beyond a reasonable doubt, that the non-moving party cannot prove a set of

facts which would support his or her claim or entitle him or her to relief.  See Hishon v. King

& Spalding, 467 U.S. 69, 73 (1984); Harris v. City of N.Y., 186 F.3d 243, 247 (2d Cir. 1999).

When, as here, a party seeks dismissal against a pro se litigant, a court must afford the

non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471,

477 (2d Cir. 2006).  As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled
> to "special solicitude," . . . that a pro se litigant's submissions must be
> construed "liberally,". . . and that such submissions must be read to raise the
> strongest arguments that they 'suggest. . . . .  At the same time, our cases
> have also indicated that we cannot read into pro se submissions claims that
> are not "consistent" with the pro se litigant's allegations, . . or arguments that
> the submissions themselves do not "suggest, . . ." that we should not "excuse
> frivolous or vexatious filings by pro se litigants" . . . and that pro se status
> "does not exempt a party from compliance with relevant rules of procedural
> and substantive law . . . ."

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant #1, __

F.3d __, 2008 WL 3294864, at *5 (2d Cir. Aug. 12, 2008) ("On occasions too numerous to

count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, ... a court is

obliged to construe his pleadings liberally.'" (citations omitted)).

## B.  Personal Involvement

Nadler claims that Davis has failed to allege facts sufficient to establish Nadler's

personal involvement required to maintain a §1983 action.  Davis claims that Nadler was

personally involved because Nadler was aware of the constitutional violations from the

grievances Davis submitted that were never answered, Nadler failed to initiate an

5

investigation of Davis' complaints,[5]  and Nadler held a position as a supervisor.

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus, supervisory officials may not be held liable merely because they held a position of authority. Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  However, supervisory personnel may be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).

First, failing to "receive a response to a complaint . . . is insufficient to establish personal involvement [especially when] there is no other showing that [defendant] knew of or directly participated in any alleged violation." Abbas v. Senkowski, No. 03-CV-476 (GLS/DRH), 2005 WL 2179426, at *2 (N.D.N.Y. Sept. 9, 2005).  Thus, Nader's failure to respond to Davis, without more, does not suffice to establish that he was personally involved.

Second, despite Davis' allegations that Nader assisted in creating unconstitutional

---

[5] It should be noted that prisoners have "no constitutional or federal right to an investigation into . . . [an] accident, or to have his requests for an investigation answered." Carrasquillo v. City of New York, 324 F. Supp. 2d 428, 438 (S.D.N.Y. 2004).

policies and engaged in negligent supervision, the claims are baseless.  Nadler is the

Deputy Director of Operations of the Commission on Correction.  Nadler Mem. of Law

(Docket No. 30-2) at 1.  In that capacity, Nadler's function was to ensure public awareness

of conditions within the correctional facilities in the state; however, "members of the

Commission are not endowed with any operational or supervisory responsibilities . . . . and

thus have no power to control the internal policies or procedures of each institution."

McDowell v. Stewart, No. 06-CV-1060 (GLS/DRH), 2008 WL 755291, at *4 (N.D.N.Y. Mar.

19, 2008) (internal quotations and citations omitted).  Thus, Nadler cannot be held liable for

either supervisory or policy-making responsibilities because the Commission of Correction

is not possessed of that type of responsibility or power.

Accordingly, Nadler's motion should be granted on this ground.

## C. Qualified Immunity

Nadler also contends that he is entitled to qualified immunity.  Qualified immunity

generally protects governmental officials from civil liability "insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person

would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F.

Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov.

10, 2003).  However, even if the constitutional privileges "are clearly established, a

government actor may still be shielded by qualified immunity if it was objectively reasonable

for the . . . official to believe that his [or her] acts did not violate those rights."  Smith v. City

of Albany, No. 03-CV-1157, 2006 WL 839525, at *16 (N.D.N.Y. Mar. 27, 2006) (quoting

Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230.  Here, the second prong of the inquiry need not be reached because, as discussed supra, accepting all of Davis' allegations as true, he has not shown that Nadler violated his constitutional rights.

Therefore, it is recommended in the alternative that Nadler's motion on this ground be granted.

### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that Nadler's motion to dismiss (Docket No. 30) be **GRANTED** and that Nadler be dismissed from this action**.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated:  September 2, 2008
          Albany, New York

United States Magistrate Judge

8