**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

TOUSSAINT DAVIS,

                                        Plaintiff,

              v.                                                      No. 07-CV-321
                                                                           (GTS/DRH)

WILLIAM CHAPPLE, Chief Deputy; DANIEL G.
MIDDAUGH, Sheriff; ROBERT MYERS, Shift
Commander; LT. GRIFFO, Shift Commander;
KEVIN MILLER, Correctional Officer; BAMBURY,
Correctional Officer; DONALD STOCK, Nurse
Administrator; JANE DOE, Nurse; and HELEN
HEIM, Grievance Coordinator,
                                        Defendants.

_____

**APPEARANCES:**                                      **OF COUNSEL:**

TOUSSAINT DAVIS
Plaintiff Pro Se
07-B-1357
Clinton Correctional Facility
Post Office Box 2001
Dannemora, New York 12929

DEL BUONO & DIODATI LLP                      DAVID R. DIODATI, ESQ.
Attorney for Defendants
23 Genesee Street
New Hartford, New York 13413

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

Plaintiff pro se Toussaint Davis ("Davis"),[2] an inmate previously incarcerated at the

_____

        [1]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

        [2] Davis was also known as John Healy.  See Compl. (Docket No. 1); Pl. Mem. of
Law (Docket No. 45) at 1.  He will be referred to herein as "Davis."

Oneida County Correctional Facility ("OCCF") as a pretrial detainee,[3] brings this action

pursuant to 42 U.S.C. § 1983 alleging that defendants, nine Oneida County employees

working at OCCF, violated his constitutional rights under the First, Fourth, Eighth, and

Fourteenth Amendments.  Compl. (Docket No. 1).  Presently pending is defendants' motion

for summary judgment  pursuant to Fed. R. Civ. P. 56.  Docket No. 43.  Davis opposes the

motion.  Docket No. 45.  For the reasons which follow, it is recommended that the motion

be granted in part and denied in part.


## I. Background

The facts are presented in the light most favorable to Davis as the non-moving party.

See Subsection II(A) infra.

On February 28, 2006, Davis was confined to the OCCF  and placed in an empty cell

without a mattress, clothing, underwear, bed linens, or toilet paper.  Compl. at 3.  These

conditions continued for three days.  Id.  On March 3, 2006, Davis was moved from the

empty cell to the Administrative Segregation Unit ("ASU")[4] where he was housed until

October 5, 2006 without a hearing or explanation as to why he was being housed there.  Id.

---

[3] The record does not clearly indicate whether Davis was a pretrial detainee.  While
the standards for a pretrial detainee and post-conviction inmate are nearly identical, it
appears from OCCF records that Davis was a pretrial detainee at OCCF as he was not
sentenced until April 19, 2007 following the events at issue herein.

[4] The OCCF ASU appears similar to the Special Housing Units ("SHUs") at New
York State facilities.  Those units "consist of single-occupancy cells grouped so as to
provide separation from the general population . . . ."  N.Y. Comp. Codes R. & Regs. tit. 7,
§ 300.2(b) (1995).  Inmates are confined in a SHU as discipline, pending resolution of
misconduct charges, for administrative or security reasons, or in other circumstances as
required.  Id. at pt. 301.

at 4-5.  According to OCCF records, Davis was segregated because his "continued presence in general population . . ., poses a serious threat to life, property, self, staff and other inmates, or to the security and good order of the facility because . . . [of] possible heroin[] withdrawals and . . . ." his pending criminal charge of murdering a police officer. Docket No. 43-5 at 17; see also Docket No. 43-5 at 18.  Upon admission to the ASU, Davis was placed on full restraint.[5]  Id. at 19.  The restraint order was removed on March 8, 2006, but was reinstated sometime thereafter.[6]  Id. at 7, 20.  On June 4, 2006, Davis was brought to the recreation yard in full restraint and allowed to exercise during which he fell.  Id.; Compl. at 4.

Davis was taken to the medical department in a wheelchair immediately after the accident.  Compl. at 4; Docket No. 43-5 at 7, 9.  Davis complained of a sore left shoulder and pain from the middle of his back to his tail bone.  Docket No. 43-5 at 1, 9.  Davis was able to stand and walk, light swelling around the left shoulder was noted, x-rays were ordered, and Davis was sent back to his cell under his own power.  Id. at 1, 2, 9 ("[Prior to going to medical, Davis] had full movement and feeling in both legs, also he could rotate his shoulder in a full circle . . . [and after the examination, Davis] walked back to his unit under his own will still in full restraints.").  Davis was not given pain medication as he was already taking Tylenol.  Id. at 1.

The following day, Davis requested treatment complaining that his "neck and . . . back

---

[5] Full restraint status requires that inmates be "placed under . . . restraint[s] . . . whenever the inmate leaves the cell for any reason."  Docket No. 43-5 at 19.

[6] Full restraint orders were reevaluated every seven days.  Docket No. 43-5 at 16. The record here contains documentation for reviewing Davis' status for March 2006 but not for any period thereafter.  Id. at 20.

[are] stiff [and] painful and [he was] experiencing sharp pains up and down [his] left arm and [was] unable to sit in the sitting position without pain . . . ."  Docket No. 43-5 at 3.  Upon examination, Davis was still ambulating well, there was no swelling or discoloration on his left arm, and he retained good range of motion in his joints.  Id. at 4.  The following day, Davis was seen by a physician, who ordered x-rays.  Id. at 5.  X-rays were taken of his left shoulder and mid-to-lower back, neither showing evidence of fractures or other abnormalities.  Id. at 6.  Davis' shoulder and lower back were not sore and the pain actually emanated from his upper back and neck.  Pl. Mem. of Law at 2.

    On October 5, 2006, Davis' confinement status was reviewed and he was moved into the general prison population.  Compl. at 5.  Davis was informed that for reasons of institutional security, his legal materials would be photocopied and stored. Id.  Davis objected.  Id.; Docket No. 43-5 at 10.  A verbal confrontation ensued between Davis and defendants Miller and Meyer, ending with Davis being pepper sprayed and restrained. Docket No. 43-5 at 10-11, 13-16.  Davis was "hog tied and put in a restraint chair for [sixteen] hours . . . [and] still suffers from lack of vision, as well as severe back pains from the defendants' assault upon [him]."  Pl. Mem. of Law at 10.  Later that evening, Davis' property was returned, but six documents were missing and the corrections officer removed Davis' blanket, bed linens, and towels from his cell.  Compl. at 6.  Davis was temporarily provided his blanket, bed linens, and towels until October 24, 2006.  Id. at 6- 7.

    Davis filed numerous complaints about the events occurring on October 5, 2006 concerning his stolen legal property, the defendants' use of excessive force, and the conditions in which he was confined.  Id. at 7.  These complaints were sent to defendants

4

Heim, Chapple, and the Commission of Correction.[7]  Id.  Davis' family also sent complaints to the Commission his behalf.  Id.  The complaints were not answered.  Id.  This action followed.


## II.  Discussion

In his complaint Davis alleges that defendants violated his (1) First Amendment rights by retaliating against him in depriving him of his legal documents and providing poor living conditions, (2) Fourth Amendment rights by photocopying and searching his legal mail without his consent, (3) Eighth Amendment rights by being deliberately indifferent to his injuries and housing him in inadequate living conditions, and (4) Fourteenth Amendment due process rights by housing him in ASU without a hearing.  Defendants seek summary judgment based on (1) lack of personal involvement, (2) qualified immunity, and (3) failure to state a claim.


## A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; Celotex Corp. v.

---

[7]The New York State Commission of Correction establishes minimum standards for the management of correctional facilities in the state and investigates and oversees their operations.  New York State Comm'n of Correction Home Page (visited Sept. 2, 2008), <http://www.scoc.state.ny.us>.

Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir.2006); see also Sealed Plaintiff v. Sealed Defendant # 1, 537 F.3d 185, 191-92 (2d Cir.2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, ... a court is obliged to construe his pleadings liberally.' " (citations omitted)). However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247-48.

### B.  Personal Involvement

Defendants claim that Davis has failed to prove facts sufficient to establish the personal

involvement of defendants Middaugh, Chapple, and Heim required to maintain a §1983

action.  Davis claims that these defendants were involved because they received his

complaints and were thus aware of the alleged constitutional violations.  Specifically, Davis

alleges that Middaugh and Chapple initiated an "unconstitutional polic[y] of punishing pre-

trial detainees for the nature of the crimes that are alleged" and placing him in ASU without

due process and that Heim followed this policy.  Pl. Mem. of Law at 6.

  "'[P]ersonal involvement of defendants in alleged constitutional deprivations is a

prerequisite to an award of damages under § 1983.'"  Wright v. Smith, 21 F.3d 496, 501 (2d

Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus,

supervisory officials may not be held liable merely because they held a position of authority.

Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  However, supervisory personnel may

be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged constitutional violation,
> (2) the defendant, after being informed of the violation through a report or
> appeal, failed to remedy the wrong, (3) the defendant created a policy or
> custom under which unconstitutional practices occurred, or allowed the
> continuance of such a policy or custom, (4) the defendant was grossly
> negligent in supervising subordinates who committed the wrongful acts, or (5)
> the defendant exhibited deliberate indifference to the rights of inmates by
> failing to act on information indicating that unconstitutional acts were
> occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319,

323-24 (2d Cir. 1986)).


### 1. Middaugh and Chapple

  Daniel Middaug, the Oneida County Sheriff, and William Chapple, the Chief Deputy,

allegedly failed to respond and investigate Davis' complaints and created a policy which

7

kept individuals in ASU based on their criminal charges.

First, failing to "receive a response to a complaint . . . is insufficient to establish personal involvement [especially when] there is no other showing that [defendant] knew of or directly participated in any alleged violation." Abbas v. Senkowski, No. 03-CV-476 (GLS/DRH), 2005 WL 2179426, at *2 (N.D.N.Y. Sept. 9, 2005).  Additionally, prisoners have "no constitutional or federal right to an investigation into . . . [an] accident, or to have his requests for an investigation answered." Carrasquillo v. City of New York, 324 F. Supp. 2d 428, 438 (S.D.N.Y. 2004).  The record is devoid of any facts indicating that these defendants received or reviewed Davis' complaints.  Thus, the failure of Middaug and Chapple to respond to Davis, without more, does not suffice to establish that they were personally involved.

However, Davis' assertions that Middaug and Chapple were responsible for unconstitutional policies does raise a material question of fact.  While at OCCF, Davis was placed in the ASU indefinitely based upon his criminal charges.  The record reflects nod periodic review of Davis' confinement status throughout his months at OCCF.[8]  Thus, a question of material fact arises whether Middaugh and Chapple operated OCCF pursuant to a policy in which a detainee's confinement in ASU went unreviewed for a substantial period.

The same holds true for Davis' restraint order.  The order was discontinued in March

---

[8] OCCF procedures indicate that incoming inmates are screened, placed in "a housing area designated for that classification purpose, [and] . . . classification is reviewed at no greater than a 90 day interval." Oneida County Sheriff's Office: Correction Division: Inmate Classification Unit, *available at* http://oneidacountysheriff.us/correction/classification.aspx (visited Oct. 29, 2009).  Furthermore, while not binding on OCCF, federal and New York State regulations for pretrial detainees are instructive and similar to those for federal detainees which require weekly re-evaluation.  28 C.F.R. §541.22.

2006, yet corrections staff indicated that Davis was still subject to the order in June.  The record fails to include any information concerning any periodic review as required by OCCF procedures subsequent to March.  As previously stated, if true, such policies refusing to re-evaluate the need for restraints creates a question of fact as to whether these defendants intended to punish Davis rather than maintain institutional security in violation of Davis' constitutional rights.

Accordingly, material questions of fact exist and defendants' motion for summary judgment on this ground should be denied.

### 2. Heim

Helen Heim was the grievance coordinator at OCCF.  As discussed supra, Heim cannot be deemed personally involved for failing to respond to or investigate Davis' multiple complaints.  See  Abbas, 2005 WL 2179426, at *2; Carrasquillo, 324 F. Supp. 2d at 438. Additionally, the record fails to establish that Heim was responsible for creating or enforcing any of the confinement policies upon which Davis rests his claims.   Moreover, there are no allegations that Heim was grossly negligent in hiring or supervising subordinates. Accordingly, defendants' motion for summary judgment as to Heim should be granted.

### C. First Amendment

### 1. Retaliation

Liberally construing Davis' complaint, he alleges that he was continually kept in ASU and restraints and subjected to excessive force in retaliation for the nature of his criminal

9

charge.  To state an actionable claim for retaliation, a plaintiff must first allege that the plaintiff's conduct was constitutionally protected and that this protected conduct was a substantial factor that caused the adverse action against plaintiff.  Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996); see also Lipton v. County of Orange, 315 F. Supp. 2d 434, 447-48 (S.D.N.Y. 2004) (applying First Amendment retaliation factors to a pretrial detainee complaint).  Courts must view retaliation claims with care and skepticism to avoid judicial intrusion into matters of prison administration.  Jackson v. Onondaga County, 549 F. Supp. 2d 204, 214-15.  Conclusory allegations alone are insufficient.  Id. at 214 (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983) (explaining that "claim[s] supported by specific and detailed factual allegations . . . ought usually be pursued with full discovery.")).

In this case, Davis has failed to allege facts sufficient to support a retaliation claim. First, the nature of Davis' crimes does not constitute an activity protected by the Constitution.  Davis claims to have filed multiple grievances about his situation, but those grievances all appear to have been filed after the alleged constitutional violations occurred and not before.  Thus, while filing grievances is an action protected by the First Amendment, that action cannot be a motivation for the alleged retaliation where it does not occur until after the allegedly retaliatory action.  To the extent that Davis was engaged in activities protected by the Constitution, he alleges no facts other than conclusory allegations to demonstrate that he was the victim of retaliatory conduct.  These conclusory allegations, without more, are insufficient to maintain the present claims.  Id.

Accordingly, defendants' motion should be granted as to these claims.

**2. Denial of Access to Courts**

"Prisoners, including pretrial detainees, have a constitutional right of access to the courts . . . ." Bourden v. Loughren, 386 F.3d 88, 92 (2d Cir. 2004) (internal quotation marks omitted) (citing Bounds v. Smith, 430 U.S. 817, 821-22 (1977) (citations omitted) (holding that all prisoners have a well-established Constitutional right to "adequate, effective, and meaningful" access to courts). This "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers . . . ." Bounds, 430 U.S. at 828. In order to state a claim for denial of access to the courts, a plaintiff must allege "that a defendant caused 'actual injury,' i.e., took or was responsible for actions that 'hindered [a plaintiff's] efforts to pursue a legal claim.'" Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) (citing Monsky v. Moraghan, 127 F.3d 243, 247 (2d Cir. 1997) (quoting Lewis v. Casey, 518 U.S. 343, 351 (1996)). The injury must have been the result of the deliberate and malicious behavior of a defendant. Tajeddini v. Gluch, 942 F. Supp. 772, 780 (D. Conn. 1996).

In this case, Davis has failed to assert an actual injury that he suffered at the hands of any defendant. Davis contends that during his transfer from ASU to general population, defendants lost six legal documents. Other than claiming the loss, Davis has failed to identify a specific case or motion which was prejudiced by the missing documents. Such conclusory allegations, without more, are insufficient to establish actual injury. See Lewis, 518 U.S. at 351 (giving examples of actual injury including inability to assert or continue a claim); Gonzalez-Cifuentes v. Torres, No. 04-CV-1470 (GLS/DRH), 2007 WL 499620, at *6 (N.D.N.Y. Feb. 13, 2007) (stating that plaintiff "identifies no particular case or claim which was impeded or how any defendant's conduct impeded his litigation of a claim or defense [and h]e has thus failed sufficiently to allege any actual injury from this alleged incident,

much less that [the] conduct was deliberate and malicious.") (internal citations and quotations omitted); Arce v. Walker, 58 F. Supp. 2d 39, 43 (W.D.N.Y. 1999) ("[A] claim that prison practices kept a prisoner from raising an argument or asserting a claim in his pleadings, in response to a dispositive motion, or at trial would likely suffice to show harm," but claims that the prison practice prevented the inmate from "ma[king] a more compelling or sophisticated argument would not.").

By this analysis, Davis' claims that photocopying and retaining copies of his legal papers are insufficient to support a constitutional claim.  "Although the taking of an inmate's papers will often interfere with an inmate's right of access to courts, the Court may not presume harm, and some showing of impaired access is required."  Arce, 58 F. Supp. 2d at 44 (citations omitted).  Davis claims that defendants took his legal papers for photocopying and all but six were returned to him.[9]  As the majority of the legal documents were returned, in combination with the reasons stated above, there can be no dispute that these actions

---

[9] Davis fails to show the content of his photocopied legal documents.  Additionally, Davis' submissions do not include any exhibits.  Thus, his conclusory contentions, without more, are insufficient to withstand a motion for summary judgment.  Moreover, to the extent that Davis has alleged a constitutional claim, such contentions are untenable. Generally, disclosure of legal documents, whether it be charging documents, convictions, case law, legislation, or other legal research, is not a violation of privacy because the documents are all a matter of public record.  Swift v. Tweddell, 582 F. Supp. 2d 437, 447-48 (W.D.N.Y. 2008) ("The disclosure also did not violate any of plaintiff's privacy rights, since the information in question was not privileged or otherwise protected.") (citing Paul P. v. Verniero, 170 F.3d 396, 403 (3d Cir. 1999) ("[A]rrest records and related information are not protected by a right to privacy."); Cline v. Rogers, 87 F.3d 176, 179 (6th Cir. 1996) (explaining that pursuant to Supreme Court decisions, there is "no general constitutional right to nondisclosure of private data," and that a "criminal history is arguably not a private 'personal matter' at all, since arrest and conviction information are matters of public record.")).  Davis' claims stem from the criminal charges that he killed a police officer.  Any legal information related to those charges or research are not private matters but are public matters discoverable in the public record.  As such, Davis fails to prove a constitutional right which required protection.

failed to deprive Davis of any access as he has suffered no harm.

Accordingly, defendants' motion as to these claims should be granted.

## D. Fourteenth Amendment

Davis asserts various claims under the Eighth Amendment, which explicitly prohibits the infliction of "cruel and unusual punishment."  U.S. Const. amend. VIII.  Davis was held at OCCF as a pretrial detainee from February 28, 2006 until April 26, 2007, when he was transferred to state custody following his criminal conviction and sentencing.  See note 3 supra.  The Eighth Amendment protections apply to those who have been convicted of a crime, sentenced, and are thus suffering the "punishment" contemplated by the Cruel and Unusual Punishment Clause.  Benjamin v. Fraser, 343 F.3d 35, 49-50 (2d Cir. 2003) (citing cases).  Claims concerning the conditions of confinement brought by a pretrial detainee, such as Davis here, must be analyzed under the Fourteenth Amendment Due Process Clause.  Id.

The standards when evaluating deliberate indifference to a person in custody are identical whether brought under the Eighth or Fourteenth Amendment.  Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009) ("Claims for deliberate indifference to a serious medical condition or other serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment."); see also Shane v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 199-200 (1989) ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being . . .

13

[including] food, clothing, shelter, medical care, and reasonable safety . . . .").  Accordingly, cases analyzed under the Eighth Amendment provide guidance in analyzing cases, as here, considered under the Fourteenth Amendment.

### 1. Medical Care

The test for a § 1983 claim is twofold. First, the prisoner must show that the condition to which he was exposed was sufficiently serious. Caiozzo, 581 F.3d at 72 (citations omitted). Second, the prisoner must show that the prison official demonstrated deliberate indifference by knowing of the risk and failing to take measures to avoid the harm. Id.  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer, 511 U.S. at 844.

"'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim. Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003) (quoting Hudson v. McMillian, 503 U.S. 1,9 (1992)); see also Benjamin, 343 F.3d at 51 n.17. Because there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003) (citing Chance, 143 F.3d 698, 702 (2d Cir. 1998)).  The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case. Smith, 316 F.3d at 185.

14

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs." <u>Chance</u>, 143 F.3d at 702. Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). "Mere disagreement over proper treatment does not create a constitutional claim" as long as the treatment was adequate. <u>Chance</u>, 143 F.3d at 703. Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . . are not adequate grounds for a section 1983 claim." <u>Sonds v. St. Barnabas Hosp. Corr. Health Servs.</u>, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).

In this case, Davis contends that defendants failed to provide adequate medical care. Defendants do not dispute the objective seriousness of Davis' alleged physical injuries but contend that Stocke, against whom the claim is asserted, was not deliberately indifferent to Davis. Without deciding the objective prong of the analysis, the record fails to support Davis' claim of deliberate indifference on the subjective prong.

Immediately after Davis' fall, he was taken to the medical department by wheelchair. Compl. at 4; Docket No. 43-5 at 7, 9. Despite Davis' claims of indifference, the record indicates that there was little objective evidence that Davis had suffered any significant injury. Davis was able to stand and walk under his own power, and he was receiving pain medication for whatever minor aches might surface. Docket No. 43-5 at 1, 2, 9. Additionally, when Davis complained of additional pain the following day, the record indicates that Davis was again treated. Medical notes state that Davis was ambulating well, there was no swelling or discoloration in his arm, and he retained good range of motion in his joints. <u>Id.</u> at 5. Moreover, x-rays of his shoulder and back were negative. <u>Id.</u> at 6. To

15

the extent Davis claims that additional x-rays should have been performed, such opinions represent a difference of opinion on treatment, which is insufficient to establish a claim for deliberate indifference.  Sonds, 151 F. Supp. 2d at 312.

Additionally, to the extent that Davis claims that the wrong areas of his body were treated, such allegations are belied by the record.  While Davis contends that the x-rays should have been taken of his upper back and arm, the medical record, Davis' subjective reports of pain, and several responders to the accident all indicated that Davis injured his shoulder and lower back.  Docket No. 43-5 at 1, 3, 9.  Furthermore, even if the physician did mistreat Davis, there is nothing in the record to indicate that he did so intentionally or deliberately as the objective evidence and subjective complaints suggested that Davis' shoulder and lower back were the primary areas of injury.  Such a misdiagnosis is, at worst, negligence.  See Estelle , 429 U.S. at 107.  This is insufficient to sustain a claim of deliberate indifference.  Id. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

This claim is asserted against defendants Stock, Jane Doe, and Heim.  Accordingly, defendants' motion as to this claim should be granted and that judgment be granted to these three defendants.

**2. Continued Confinement in ASU**

"In evaluating the constitutionality of conditions or restrictions of pretrial detention . . . the proper inquiry is whether those conditions amount to the punishment of the detainee."  Bell v. Wolfish, 441 U.S. 520, 536 (1979).  If a restriction is "reasonably related to a legitimate goal [and is not] . . . arbitrary or purposeless," it does not rise to the level of punishment.  Id.

at 538-39.  For example, "loading a detainee with chains and shackles and throwing him in a dungeon . . . " constitute conditions so harsh that they are deemed punishment because the "legitimate nonpunitive governmental objectives[10] . . . could be accomplished in so many alternative and less harsh methods . . . ."  Id. at 539 n.20.

In this case, viewing the facts in the light most favorable to Davis, he has raised an issue of material fact with respect to whether his confinement and accompanying conditions were punishment.  First, Davis' version of his ASU confinement, if proven true, constitutes intentional and overt punishment.  Specifically, Davis alleges that the corrections officers continually informed him that his segregation was punishment and that this was the treatment he could continue to expect since he killed a police officer.  See Compl. at 6, 10-11; Pl. Mem. of Law at 2.  Such actions represent obvious punitive intent rather than an intent to maintain institutional security and order.  Bell, 441 U.S. at 539 n.20.

Second, when reviewing the objective circumstances compared to defendants' allegations of legitimate penological interests, Davis has raised a material question of fact regarding the validity of defendants' reasoning.  Upon his arrival at the facility, Davis was determined to be a safety risk to himself and others due to his criminal charges of killing a police officer and he was placed into administrative segregation.  The danger here was unlike that posed by other similarly situated inmates where protective custody was initiated due to gang memberships that led to tensions between rival inmate gangs (Torres v. Stewart, 263 F. Supp. 2d 463, 469-71 (D. Conn. 2003)), or unhygienic acts which

_____

[10] Such goals include "maintaining institutional security and preserving internal order and discipline . . . ."  Bell, 441 U.S. at 546.  This includes the authority to engage in actions essential to maintaining "the safety of inmates and corrections personnel . . . ."  Id. at 547.

17

endangered the health of other inmates and corrections officers (McFadden v. Solfaro, Nos. 95-CV-1148 & -3790, 1998 WL 199923, at *7 (S.D.N.Y. April 23, 1998)).  The apparent danger here was arguably not between Davis and other inmates, or potentially violent outbursts by Davis, but rather how the corrections officers would treat Davis.  Institutional integrity is a legitimate concern, but corrections officers are reasonably expected to respect the rights of all inmates.  Therefore, potential concerns that violence would be incited from corrections officers raises a question of fact whether Davis was held in ASU for improper reasons outside the realm of institutional security.

Moreover, the record shows no internal review of Davis' confinement, which lasted for over seven months.  Davis also contends that he was never apprised of why he was subjected to the segregation.  The duration of his confinement alone suggests a material question of fact.  See Covino v. Vermont Dep't of Corr., 933 F.2d 128, 130 (2d Cir. 1991) ("At some point . . . the administrative necessity for involuntary lock-up begins to pale. Indeed, after nine months, it smacks of punishment.").  This, in addition to Davis' allegations that he was never notified of the reasons for his confinement or was given an opportunity to have them reviewed, raise a factual issue as to defendants' true objectives for Davis' restrictions.  Bell, 441 U.S. at 539 n.20 ("[A] court must look to see if a particular restriction or condition, which may on its face appear to be punishment, is instead but an incident of a legitimate nonpunitive governmental objective.").[11]

---

[11]Viewing the record in the light most favorable to Davis, his complaint may also be construed to assert a denial of due process under the Fourteenth Amendment here for the failure of defendants to provide reasons or a hearing concerning Davis' confinement in ASU.  See subsection II(A) supra.  Since it is recommended herein that Davis' claims concerning his confinement in ASU should survive on other grounds and since defendants have not addressed such a claim, this possible claim will not be further addressed herein.

Accordingly, defendants' motion as to these claims should be denied.

### 3. Restraints During Recreation

As previously discussed, restrictions to pre-trial detainees are constitutional so long as they are related to legitimate security concerns and are not punitive in nature.  Bell, 441 U.S. at 538-39.  Cases involving restraint orders in inmate litigation have found restraints "permissible to prevent a threat to the safety or security of staff, inmates, or State property [so long as s]uch orders are not authorized as disciplinary measures."  Dawes v. Coughlin, 964 F. Supp. 652, 658 (N.D.N.Y. 1997) (citations omitted).  Restraints during an hour-long recreation time do not infringe an inmate's ability to "move around in the recreation area" and, thus, they are constitutional so long as they are necessary for safety purposes.  Id. (citations omitted).

For the same reasons discussed above, Davis has raised a material question of fact as to the necessity for his restraint order.  Davis contends that corrections officers used the restraints solely as punishment.  The record fails to support defendants' contentions that Davis was under a full restraint order.  Pursuant to OCCF protocol, Davis' order was reviewed three times and then discontinued in March.  Docket No. 43-5 at 20.  There is no further record of it being reinstituted or re-evaluated.  Without such documentation, a question of fact exists whether the restraint orders in June were punitive rather than prophylactic.

Accordingly, defendants' motion as to this claim should be denied.

19

**4. Conditions of Confinement**

"Despite the distinct constitutional sources of the rights of pretrial detainees and

convicted inmates, state jail and prison officials owe the same duty to provide the same

quantum of basic human needs and humane conditions of confinement to both groups . . .

." Caiozzo, 581 F.3d at 71-72 (quoting Hare v. City of Corinth, Miss., 74 F.3d 633, 649 (5th

Cir. 1996)).  To prove a violation based on conditions of confinement, a pretrial detainee

must show both an objective and subjective prong.  Id. at 70-71.  With regard to such

claims, the Second Circuit has cited a First Circuit case to illustrate the standard's

applicability.  Id. at 71 n.4 (citing Suprenant v. Rivas, 424 F.3d 5 (1st Cir. 2005).  To prove

both prongs, "the plaintiff must establish that, from an objective standpoint, the conditions of

his confinement deny him the minimal measure of necessities required for civilized living.[12]

Second, the plaintiff must show that, from a subjective standpoint, the defendant was

deliberately indifferent to inmate health or safety."  Suprenant, 424 F.3d at 18-19.

In this case, Davis alleges two sets of events.  The first lasted for three days when he

was placed into an empty cell without a mattress, clothing, underwear, bed linens, or toilet

paper.  Compl. at 3.  In this case, even construing the facts in the light most favorable to

Davis, this combination of conditions for the period of time alleged does not rise to the level

of a departure from the minimal measure of necessities for civilized living because Davis

has failed to establish such a deprivation.  Jones v. Goord, 435 F. Supp. 2d 211, 235

---

[12] The objective standard requires proof of a deprivation of "a single human need." Jones v. Goord, 435 F. Supp. 2d 211, 235 (S.D.N.Y. 2006) (citations omitted).  "Various conditions can be aggregated to state a[] . . . violation, but only to the extent that the aggregation of those conditions affects a single need, such as lack of blankets and a lack of heat combining to deprive an inmate of warmth."  Id. (citations omitted).

(S.D.N.Y. 2006) (citations omitted); Russell v. Enser, 496 F. Supp. 320, 325 (D. S.C. 1979) ("[T]he alleged unavailability of bed linen [is not a constitutional issue] . . . ."). Additionally, the cited conditions only persisted for three days. Such a limited duration does not suffice to satisfy the subjective prong of the analysis. See Suprenant, 424 F.3d at 20 ("[D]uration may affect the [constitutional] calculus [for conditions of confinement].") (citing Hutto v. Finney, 437 U.S. 678, 686-87 (1978) (holding that unpleasant conditions of confinement "might be tolerable for a few days and intolerably cruel for weeks or months.").

The second event, occurring from October 5 to 24, involved the removal, brief return, and subsequent deprivation of Davis' blanket, bed linens, and towels from his cell. Compl. at 6-7. For the same reasons stated in the preceding paragraph, even construing the facts in the light most favorable to Davis, he has failed to show the objective prong of the analysis. Davis' allegations do not amount to the deprivation of any human need. Thus, he has failed to raise a material question of fact.

Accordingly, defendants' motion as to these claims should be granted.


### 5. Excessive Force

To sustain a claim of excessive force, a pretrial detainee must establish both objective and subjective elements. Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999); see also United States v. Walsh, 194 F.3d 37, 47-48 (2d Cir. 1999) (holding that an excessive force claim by a pretrial detainee must be analyzed under the Fourth rather than the Eighth Amendment, but the standards under the two amendments are identical). The objective element is "responsive to contemporary standards of decency" and requires a showing that "the injury actually inflicted is sufficiently serious to warrant [constitutional] protection."

Hudson, 503 U.S. at 9 (internal citations omitted); Blyden, 186 F.3d at 262. The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." Sims, 230 F.3d at 21 (citation omitted). The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Id. (quoting Hudson, 503 U.S. at 7).

In this case, viewing the facts in the light most favorable to Davis, he alleges that he suffered a vision impairment and severe back pain due to the use of excessive force against him. Pl. Mem. of Law at 10. Such allegations, if true, represent sufficiently serious injuries. See Koehl v. Dalsheim, 85 F.3d 86, 88 (2d Cir. 1996) (holding that visual impairments such as the loss of depth perception constituted a serious medical need); Nelson v. Rodas, No. 01-CV-7887 (RCC/AJP), 2002 WL 31075804, at *14 (S.D.N.Y. Sept. 17, 2002) (holding that "[s]evere back pain, especially if lasting an extended period of time, can amount to a serious medical need . . . .") (citations and quotations omitted). Thus, Davis has raised a question of fact with regards to the objective component.

A question of fact also exists as to whether the force applied was in a good-faith effort. Davis contends that he disagreed with defendants and was then physically assaulted and pepper sprayed. Compl. at 5-6. If Davis' proof is credited, such actions could be found unreasonable and excessive in the circumstances. Defendants contend that Davis turned on the officers in an aggressive manner with his hands raised. Docket No. 43-5 at 10-11. Thus, this evidence leaves the merits of Davis' claim to be resolved on the basis of the credibility of the witnesses, an issue inappropriate for resolution on a motion for summary judgment.

Accordingly, defendants' motion as to this claim should be denied.

## C. Qualified Immunity

Defendants also contend that they are entitled to qualified immunity.  Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003).  However, even if the constitutional privileges "are clearly established, a government actor may still be shielded by qualified immunity if it was objectively reasonable for the . . . official to believe that his [or her] acts did not violate those rights."  Smith v. City of Albany, No. 03-CV-1157, 2006 WL 839525, at *16 (N.D.N.Y. Mar. 27, 2006) (quoting Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230.  Here, the second prong of the inquiry need not be reached because, as discussed supra, accepting all of Davis' allegations as true, he has not shown that defendants have retaliated against him, violated his right of access to courts, been deliberately indifferent to his medical needs, or improperly subjected him to unconstitutional conditions of confinement.

23

However, the second prong of the inquiry need be addressed with regard to Davis' claims of unconstitutional continued administrative segregation, restraints, and excessive force.  The Second Circuit has cited <u>Bell</u> for the proposition that pretrial detainees may be confined and segregated under restrictions so long as they are for legitimate safety concerns and not punitive ones.  <u>See, e.g.</u>, <u>Lareau v. Manson</u>, 651 F.2d 96, 102-05 (2d Cir. 1981).  Thus, the law with regard to administrative segregation and restraint orders motivated by punitive intentions have been clearly established as unconstitutional for almost thirty years, well before 2006.  Accepting all of Davis' allegations as true, defendants acted unreasonably in segregating Davis without notification or re-evaluation of his commitment status as well as reinstituting a full restraint order without re-evaluation.  The same is true of the well-established right of pretrial detainees to be free from excessive force.  <u>See</u> <u>e.g.</u>, <u>United States v. Walsh</u>, 194 F.3d 37, 47-48 (2d Cir. 1999).  This right was established long before 2006.  Additionally, accepting Davis' allegations as true, defendants acted unreasonably in subjecting him to excessive force.

Therefore, it is recommended in the alternative that defendants' motion on this ground be granted as to all claims except those for continued administrative segregation, restraint orders, and excessive force.

### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for summary judgment (Docket No. 43) be:

1. **DENIED** as to all claims involving the continued administrative segregation, full

restraint orders, and excessive force; and

    2.  **GRANTED** as to all other claims and judgment should be granted in all respects to

defendants Stock, Jane Doe, and Heim and those defendants terminated from this action**.**

    Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the

foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO**

**OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE**

**REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892

F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:  November 4, 2009
       Albany, New York

_____
United States Magistrate Judge